FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

SEP 20 2019

JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

RACHEL SIMS                                                                   PLAINTIFF

V.                      CASE NO. 4:19-CV-653-JM

LITTLE ROCK PLASTIC SURGERY,
P.A.; MICHAEL L. SPANN, M.D.;
AND KRISTY SPANN                                     DEFENDANTS

This case assigned to District Judge Moody
and to Magistrate Judge Kearney

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND MONEY DAMAGES

Comes now, Rachel Sims, by and through her attorneys, McMath Woods P.A., and states the following as her Verified Complaint for Injunctive Relief and Money Damages:

### PARTIES

1. Rachel Sims ("Sims" or "Plaintiff") is a resident and citizen of Little Rock, Pulaski County, Arkansas.

2. Defendant Little Rock Plastic Surgery, P.A. ("LRPS") is a professional association organized under the laws of the state of Arkansas. The principal place of business for LRPS is located in Little Rock, Arkansas.

3. Defendant Michael L. Spann, M.D. ("Dr. Spann") is a resident and citizen of Paron, Arkansas. Dr. Spann is the owner of LRPS.

4. Defendant Kristy Spann is a resident and citizen of Paron, Arkansas. Ms. Spann is the Business Manager of LRPS.

### JURISDICTION AND VENUE

5. Under Arkansas' long-arm statute, Ark. Code Ann. § 16-4-101(b), and the Fourteenth Amendment of the United States Constitution, this Court has personal jurisdiction over

all Defendants. Dr. Spann and LRPS are engaged in the business of dermatological medicine in Little Rock, Arkansas. Dr. Spann and Ms. Spann reside in Little Rock, Arkansas.

6. This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1367. Plaintiff alleges facts arising out of Defendants' actions against her in connection with and after her employment separation. The Arkansas common law and statutory claims arise out of the same case or controversy as the federal statutory claims.

7. This Court is the proper venue for this matter. Plaintiff resided and worked in this District during all relevant periods. The individual Defendants reside in this District, and LRPS is located within the District.

## FACTS

8. Sims is a Registered Nurse (R.N.) and Aesthetic Nurse Injector and Laser and Skincare Specialist. She has received various professional certifications in plastic surgery. She has extensive training from the American Society of Aesthetic Plastic Surgery and the applicable vendors. With seven years of experience, Sims is among the most experienced in her field in Arkansas.

9. On August 8, 2012, LRPS hired Sims to be an Aesthetic Nurse Injector, Laser and Skincare Specialist.

10. As she thrived in her position, Sims expanded the practice of cosmetic skincare for LRPS.

11. While working for LRPS, Dr. Spann directed Sims to create a Shutterfly photobook. For this on-going project, Dr. Spann knew it would necessitate that Sims take the photos using her personal phone and transmit them to her personal email, which enabled her to devote after-hours time to work on the project while also utilizing higher quality graphics available on her phone.

12. Despite her substantial success, LRPS failed to properly compensate or appreciate Sims or her outstanding contribution to the clinic. Among other things, LRPS and the Spann Defendants withheld money from Sims's paycheck without her prior knowledge or consent, reduced her work schedule, and altered her commission scale that resulted in reduced income.

13. On June 27, 2019, Sims notified LRPS of her decision to resign. She notified Dr. Spann that July 19th would be her last day of employment.

14. Prior to Sims's last day of work for LRPS, Dr. Spann and LRPS insisted that she sign a document they had unilaterally prepared and entitled "Exit Agreement." The proposed agreement would have required Sims to make specific certifications and be subject to liquidated damages, even though LRPS offered no consideration in return.

15. After Sims reasonably refused to sign the agreement, Dr. Spann and LRPS abruptly accelerated the last day of her employment. Her employment ended on July 15th, instead of the originally agreed-upon date of July 19th.

16. Immediately after Sims's employment separation, Defendants began to systematically attempt to divert business from Sims and destroy her professional reputation. Defendants' goal was to prevent Sims from competing with LRPS.

17. At no time during her employment with LRPS did Sims execute a non-compete or non-solicitation covenant or agreement.

18. On August 12, 2019, without justification, Dr. Spann and LRPS filed a formal written complaint against Sims with the Arkansas State Board of Nursing ("Nursing Board").

19. In the complaint, LRPS made various false allegations against Sims. Among others, the false allegations include the following: (1) Sims "engaged in a systematic process of improperly accessing, copying and downloading information that contained" comprehensive

"protected health information . . . of LRPS patients"; (2) Sims impermissibly acquired information for "in excess of 5,000 patients"; and (3) Sims "has been contacting these former patients and sharing their information with third parties not authorized to have such information."

20.     The complaint to the Nursing Board also alleges that Sims "has violated the requirements of HIPAA to maintain the privacy of patients' PHI."

21.     Dr. Spann and LRPS knew or should have known that the allegations it conveyed to the Nursing Board were false.

22.     Because Ms. Sims is a member of the Nursing Board, the matter has been referred to the Arkansas Department of Health. The matter is under investigation and could impact Ms. Sims's ability to continue practicing as an R.N. Depending on the outcome of the investigation, portions of the statements contained in Defendants' complaint could be made public.

23.     Defendants' relentless pursuit of destroying Sims's practice did not end with the complaint to the Nursing Board.

24.     On September 13, 2019, Dr. Spann wrote a letter to an unknown number of his patients renewing and expanding upon his highly spurious allegations against Sims. It is reasonable to infer that Dr. Spann and LRPS sent the letter to the entirety of his patient base. A patient of Dr. Spann provided the letter to Sims.

25.     While the letter does not identify Sims by name, any patient reviewing it would almost certainly be able to identify Sims from the facts asserted and the context. In other words, the allegations are reasonably understood to pertain to Sims.

26.     At the relevant time LRPS had only four full-time employees, including Sims and another nurse, who worked in the operating room. Sims is the only nurse whose employment ended

around the time Defendants sent the letter. Patients have, in fact, concluded that the letter refers to Sims and, accordingly, asked her about the allegations.

27.   Like the statement submitted to the Nursing Board, the letter contained false statements about Ms. Sims and her actions. Among other false statements, the letter stated the following: (1) "at the conclusion" of an investigation into Sims's improper actions, LRPS terminated her employment; (2) after Sims's employment separation, she had access to patients' confidential information in violation of the law; and (3) Sims obtained "the Clinic's log-in information for one of the vendor accounts."

28.   Dr. Spann and LRPS knew or should have known when they sent the September 13, 2019 letter to an unknown number of its current or former patients that the letter was replete with false and disparaging statements about Ms. Sims.

29.   The same day they sent the patient letter, Defendant Kristy Spann, with the knowledge and approval of Dr. Spann and in the scope of her employment, sent a press release to "Members of the Media." The so-called press release was designed to further smear Sims by disseminating the scandalous and false allegations to a wider range of people, including those who are or might be patients of Sims.

30.   KATV Channel 7, which is based in Little Rock, Arkansas, broadcasted a story on September 13, 2019, based on the press release from Defendants. It also published similar information through social media, including Twitter, Facebook, and the station's website.

31.   In July 2019, days before Sims's employment separation, Defendants accessed her personal Gmail email account without her permission. Sims has learned that, without her knowledge or consent, Defendants accessed her personal email account on July 7, 2019, at 1:05 p.m. Sims did not provide authorization to Dr. Spann, Ms. Spann, or anyone else with LRPS to

access her email. Upon information and belief, Defendants have accessed her Gmail account on other occasions.

32. Upon information and belief, Defendants read emails that were stored in Sims's personal account, including email exchanges with her family, friends, and new employer, Dr. Hayden Franks with Franks Dermatology. Sims also has concluded that Defendants deleted some of her personal emails.

33. Dr. Spann and LRPS impermissibly accessed Ms. Sims's personal Instagram account initially no later than September 6, 2019, months after her employment with LRPS ended. Sims did not give Dr. Spann, Ms. Spann, or anyone else affiliated with LRPS permission to access her Instagram account. Defendants have accessed the Instagram account on other occasions.

34. Defendants changed the password to Sims's Instagram account, thereby preventing her from accessing the account. Defendants have taken possession of Sims's personal information stored in the Instagram account, including personal photographs, and photographs of patients of Sims's new clinic. Defendants have removed all posts to Sims's Instagram account.

35. Defendants' actions in improperly commandeering Sims's Instagram account have resulted in her having to create a new Instagram account from which to develop her business. Sims reasonably anticipates that it will take years for her replacement Instagram account to generate as much new business as her old account did. These losses flow directly from the actions of Defendants.

36. After Defendants commandeered the Instagram account, impermissibly accessed the Gmail account, and made the statements to the press and LRPS' patients, Sims has experienced a sharp decline in business in her new position with Franks Dermatology.

## COUNT I:
## DEFAMATION

37. Sims realleges Paragraphs 1 through 36 as if set forth word for word herein.

38. Defendants LRPS, Dr. Spann, and Ms. Spann made statements to various third parties about Sims, including but not limited to, the Nursing Board, patients of LRPS, patients of Sims, and numerous media outlets. At least one media outlet published the defamatory statements through a broadcast and social media posts.

39. The statements that did not identify Sims by name provide enough information from which a reasonable person under the circumstances would be able to determine the identity of the person about whom Defendants were referring. This is demonstrated in part by the fact that her friends, colleagues, and family members who learned of the statements connected the allegations to Sims and contacted her after drawing this reasonable inference.

40. The statements were highly disparaging in their content. Among other things, the statements alleged that Sims violated federal law and misappropriated and improperly utilized protected health information along with other confidential or proprietary information to her financial benefit.

41. As Defendants knew or should have known, the statements were false.

42. The statements have already caused substantial reputational harm to Sims and will continue to cause further substantial harm to her if a preliminary injunction is not entered.

43. To the extent Defendants enjoy a qualified privilege or immunity associated with their reporting to the Arkansas State Board of Nursing or other third parties, the protection does not apply since Defendants failed to act in good faith or acted with malice when it made the false report and statements as described in this Complaint.

## COUNT II:
## TORTIOUS INTERFERENCE WITH A CONTRACTUAL OR BUSINESS EXPECTANCY

44. Sims realleges Paragraphs 1 through 43 as if set forth word for word herein.

45. Sims has a valid business expectancy arising out of her license as an R.N. and extensive training and experience in her field. In addition, Sims enjoys a valid expectancy based on her current employment with Franks Dermatology. These business expectancies are tied to Sims's treatment of patients.

46. Defendants had knowledge of Sims's business expectancy based on her status as an R.N., Aesthetic Nurse Injector, and her employment status with Franks Dermatology.

47. Defendants' statements constitute improper interference with these business expectancies. The statements are designed to damage her reputation so that she cannot compete with Defendants.

48. In addition, Defendants' commandeering of Sims's Instagram account has substantially inferred with her business. The Instagram account provided a successful way to schedule patient appointments and attract new patients.

49. The statements and conversion of electronic communication and electronically stored information have already interfered with Sims's business expectancies and will continue to cause further harm if a preliminary injunction is not entered.

## COUNT III:
## OUTRAGE

50. Sims realleges Paragraphs 1 through 49 as if set forth word for word herein.

51. Defendants have willfully and wantonly engaged in extreme and outrageous conduct.

52.     Defendants' conduct has caused Sims emotional distress and will continue to cause further distress if a preliminary injunction is not entered.

## COUNT IV:
## CONVERSION

53.     Sims realleges Paragraphs 1 through 53 as if set forth word for word herein.

54.     The electronically stored information contained in Sims's Instagram account and in her Gmail account are her property.

55.     Defendants wrongfully possess the aforementioned electronically stored information and communication.

56.     Defendants' possession of the electronically stored information and communication has denied Sims the use and possession of the property.

57.     Sims has already suffered damages as a result of Defendants' conversion of her electronically stored information and communication and will continue to experience harm if a preliminary injunction is not entered.

## COUNT V:
## UNLAWFULL ACCESS TO STORED COMMUNICATIONS UNDER 18 U.S.C. §§ 2701 AND 2707

58.     Sims realleges Paragraphs 1 through 57 as if set forth word for word herein.

59.     Defendants intentionally accessed without authorization a facility through which an electronic communication service was provided; or intentionally exceeded an authorization to access that facility; and thereby obtained, altered, or prevented authorized access to an electronic communication while it was in electronic storage in such system.

60.     Defendants accessed without authorization Sims's Gmail email account and her Instagram account and Defendants deleted all of her Instagram files.

61. Defendants altered or deleted the email stored in Sims's Gmail account. Defendants commandeered and deleted large portions of Sims's Instagram account.

62. Sims has been damaged as a direct and proximate cause of these acts by Defendants and will continue to be damaged if a preliminary injunction is not entered.

### COUNT VI:
### INTERCEPTION AND DISCLOSURE OF ELECTRONIC COMMUNICATIONS UNDER 18 U.S.C. §§ 2511 AND 2520

63. Sims realleges Paragraphs 1 through 62 as if set forth word for word herein.

64. Defendants intentionally intercepted, endeavored to intercept, or procured another person to intercept or endeavor to intercept electronic communications.

65. Defendants intentionally disclosed, or endeavored to disclose, to other persons the contents of electronic communications, knowing or having reason to know that the information was obtained through the interception of electronic communications in violation of 18 U.S.C. § 2511.

66. Defendants intentionally used, or endeavored to use, the contents of electronic communications, knowing or having reason to know that the information was obtained through the interception of electronic communications in violation of 18 U.S.C. § 2511.

67. Sims has been damaged as a direct and proximate cause of these acts by Defendants and will continue to be damaged if a preliminary injunction is not entered.

### COUNT VII:
### COMPUTER TRESPASS UNDER ARKANSAS CODE §§ 5-41-104 AND 5-41-106

68. Sims realleges Paragraphs 1 through 67 as if set forth word for word herein.

69. Defendants intentionally and without authorization accessed, altered, deleted, damaged, or destroyed computer data.

70. Sims has been damaged as a direct and proximate cause of these acts by Defendants and will continue to be damaged if a preliminary injunction is not entered.

### COUNT VIII:
### PRELIMINARY INJUNCTIVE RELIEF

71. Sims realleges Paragraphs 1 through 70 as if set forth word for word herein.

72. Sims has demonstrated that she will suffer irreparable harm if Defendants are permitted to continue to engage in the alleged conduct.

73. Sims has demonstrated that she has a probability of success on the merits for all of her claims.

74. Sims seeks a damage award in excess of the amount required to establish diversity jurisdiction in federal court.

75. Sims seeks an award for compensatory damages.

76. Sims seeks an award for punitive damages.

77. Sims seeks an award for attorneys' fees and costs on the statutory claims.

78. Sims seek preliminary and permanent injunctions against all Defendants.

79. Sims reserves the right to amend this Complaint.

WHEREFORE, Plaintiff Rachel Sims prays for the following relief in this matter:

(a) a preliminary injunction ordering Defendants to immediately cease making defamatory statements about Plaintiff to any third party followed by a permanent injunction with extended relief;

(b) a preliminary injunction ordering Defendants to immediately cease interfering with Plaintiff's business expectancies followed by a permanent injunction with extended relief;

(c) a preliminary injunction ordering Defendants to immediately cease using or accessing any electronic communications or information of Plaintiff and to immediately return all copies of such communications or information to Plaintiff;

(d) a finding that Defendants defamed her;

(e) a finding that Defendants engaged in tortious interference;

(f) a finding that Defendants committed the tort of outrage;

(g) a finding that Defendants committed the tort of conversion;

(h) a finding that Defendants violated 18 U.S.C. §§ 2701, 2707, 2511, and 2520, and Arkansas Code Annotated §§ 5-41-104 and 5-41-106;

(i) judgment in favor of Plaintiff and against all Defendants on all counts;

(j) an award for appropriate compensatory damages;

(k) an award for appropriate punitive damages;

(l) an award for reasonable attorneys' fees and costs on the statutory claims; and

(m) all other relief to which Sims is entitled.

## VERIFICATION

I, Rachel Sims, verify under penalty of perjury that I have read the above complaint and its contents. I also verify that, to the best of my knowledge and recollection, the matters stated in the complaint are true and correct.

Executed this 20th day of September, 2019.

_____
Rachel Sims

## ACKNOWLEDGMENT

STATE OF ARKANSAS )
) ss
COUNTY OF PULASKI )

On this 20th day of September, 2019, before the undersigned, a Notary Public, duly qualified and acting in and for the County and State aforesaid, personally appeared Rachel Sims, to me well known to be the person whose name appears in the foregoing instrument, and stated that she had executed the same for the consideration, uses and purposes stated herein.

_____
Notary Public — Marilyn Kreps

My Commission Expires:

9/25/2022

MARILYN KREPS
PULASKI COUNTY
NOTARY PUBLIC - ARKANSAS
My Commission Expires September 25, 2022
Commission No. 12389367

Respectfully submitted,

By: _____
John D. Coulter
Arkansas Bar Number 98148
MCMATH WOODS P.A.
711 West Third Street
Little Rock, Arkansas 72201
Telephone: (501) 396-5400
Facsimile: (501) 374-5118
E-mail: john@mcmathlaw.com

*Attorneys for Plaintiff*
*Rachel Sims*

13