**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**RACHEL SIMS**                                                                              **PLAINTIFF**

**V.**                                        **NO. 4:19-cv-653**

**LITTLE ROCK PLASTIC SURGERY, P.A.;
MICHAEL L. SPANN, M.D.; AND KRISTY SPANN**                        **DEFENDANTS**

<u>**ORDER**</u>

Pending is Defendants' motion to dismiss Plaintiff's second amended complaint for failure to state a claim. (Doc. No. 20). Both a response and a reply have been filed, and the motion is ripe for consideration. For the reasons stated below, the motion is granted in part and denied in part.

<u>Second Amended Complaint</u>

The following factual allegations are taken from Plaintiff's second amended complaint ("SAC") (Doc. No. 19). Plaintiff Rachel Sims, a registered nurse, began working for Defendant Little Rock Plastic Surgery, P.A. (LRPS) on August 8, 2012. Defendant Dr. Michael Spann owns LRPS, and Defendant Kristy Spann is the business manager of LRPS.

As part of her employment, Dr. Spann directed Plaintiff to create a Shutterfly photobook, an ongoing project that he knew would require Plaintiff to "take the photos using her personal phone and transmit them to her personal email, which enabled her to devote after-hours time to work on the project while also utilizing higher quality graphics available on her phone."

During her time at LRPS, LRPS failed to properly compensate her—she was paid in both hourly wages and commissions—and failed to appreciate her or "her outstanding contribution to the clinic." LRSD withheld money from Plaintiff's paycheck without her consent, reduced her work schedule, and altered her commission scale. Furthermore, Plaintiff alleges that Dr. Spann

sexually harassed her by making inappropriate comments about her breasts and legs, asking her and another female employee "who is better in bed," and making comments like "I can't say what I want thanks to Matt Lauer."

On June 27, 2019, Plaintiff told Dr. Spann that she was resigning effective July 19th.  At some point thereafter, Dr. Spann asked her to sign an "Exit Agreement" that would have required Sims to be subject to liquidated damages.  When Plaintiff refused to sign, her end-date was moved up to July 15, 2019.  Her last paycheck was about $1,000 less than it should have been.

Immediately after she left LRSD, Defendants began attempting to divert business from Plaintiff and to destroy her professional reputation.  First, on August 12, 2019, Dr. Spann and LRPS filed a complaint against her with the Arkansas State Board of Nursing containing false allegations that she had improperly accessed and downloaded private health information of LRPS patients and contacted the patients and shared their information with third parties in violation of HIPAA.  That investigation is pending.

Second, on September 13, 2019, Dr. Spann wrote a letter to his patients and others, some of whom had never been patients of Defendants, making these same allegations and more against Plaintiff, knowing the allegations were false.  She alleges that while he did not use her name in the letter, "any patient reviewing it would almost certainly be able to identify [her]" given the staff of only four full-time employees and the timing of her leaving LRPS; Plaintiff was contacted by former patients, friends, colleagues, and family members who learned of the statements, connected them to her, and contacted her.  Among the false statements made in the letter were the following:  "(1) 'at the conclusion' of an investigation into Sim's improper actions, LRPS terminated her employment"; (2) after Sim's employment separation, she had access to patients' confidential information in violation of the law; and (3) Sims obtained "the

Clinic's log-in information for one of the vendor accounts."

The day the letter was mailed, Kristy Spann sent a press release containing the false and disparaging allegations against Plaintiff which was broadcast by KATV (and published on its social media platforms) and about which *Arkansas Money & Politics* published an article on its website.

Plaintiff further alleges that in the days before she left LRPS, Defendants accessed her personal email account without her authorization and deleted emails after they were transmitted but before she could read them. Then, months after her employment ended, Defendants took control of her personal Instagram account without her authorization by changing her password and removing all posts to her account. In doing this, they took possession of all Plaintiff's personal photographs as well as those of patients at the clinic where she now works. Defendants thereby improperly accessed her messages after the messages were sent but before Plaintiff reviewed them, preventing her from receiving new messages or assessing stored messages, including those from new patients requesting appointments with her. Plaintiff alleges that all of these actions by Defendants caused her to suffer business losses.

From these factual allegations, Plaintiff makes the following two claims based on federal law: unlawful access to stored communications in violation of 18 U.S.C. §§ 2701 and 2707; and interception and disclosure of electronic communications in violation of 18 U.S.C. §§ 2511 and 2520. Her remaining ten claims are based on state law: defamation, tortious interference with contractual relations or business expectancy, outrage, intrusion upon seclusion, false light, conversion, computer trespass, sexual harassment in violation of Ark. Code Ann. § 16-123-101, *et seq.*, failure to pay last paycheck, and failure to pay all commissions. All the parties are residents of Arkansas; jurisdiction is predicted on the existence of a federal question and

supplemental jurisdiction over the state law claims.

## Legal Standard

A complaint must contain "a short and plain statement of the claim that the pleader is entitled to relief" to survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 8(a)(2).  The complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests and must also contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do. *Id.* When considering a motion to dismiss for failure to state a claim, the Court "assumes all facts in the complaint to be true and construes all reasonable inferences from those facts most favorably to the complainant.  *Minnesota Majority v. Mansky*, 708 F.3d 1051, 1055 (8th Cir. 2013).

## Federal Claims

<u>Stored Communications Act.</u> First, the Court will address the two federal claims.  In Count VII of the SAC, Plaintiff alleges violations of the Stored Wire and Electronic Communications and Transactional Records Access Act (the "Stored Communications Act," or "SCA"), 18 U.S.C. §§ 2701 and 2707.  Pursuant to §2701, the Act is violated when someone "intentionally accesses without authorization a facility through which an electronic communication service is provided" or "intentionally exceeds an authorization to access that facility" and, in either instance, "thereby obtains, alters, or prevents authorized access to a wire or electronic communication *while it is in electronic storage*." 18 U.S.C. §2701 (emphasis added); *Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*, 793 F.3d 822, 838 (8th Cir. 2015).

Section 2707 allows a civil action to be brought for a violation of §2701 when the violation was knowing or intentional.

Electronic storage is defined by the SCA as "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17)(A), (B).  In *Anzaldua*, the Eighth Circuit held that the unsent draft of an email did not qualify as a an electronic communication under the SCA "because the email had not been sent, its storage on the Gmail server was not "temporary, intermediate," and "incidental to the electronic transmission thereof."  In so holding, the court cited a case from the First Circuit and one from the Southern District of New York for the proposition that an email that *has* been sent but not yet retrieved *does* qualify as an electronic communication in temporary, intermediate storage:

> *United States v. Councilman,* 418 F.3d 67, 81 (1st Cir.2005) (en banc) ("The first category ... refers to temporary storage, such as when a message sits in an e-mail user's mailbox after transmission but before the user has retrieved the message from the mail server."); *In re DoubleClick Inc. Privacy Litig.,* 154 F.Supp.2d 497, 512 (S.D.N.Y.2001) ("[The SCA] only protects electronic communications stored 'for a limited time' in the 'middle' of a transmission, i.e. when an electronic communication service temporarily stores a communication while waiting to deliver it.").

*Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*, 793 F.3d 822, 840 (8th Cir. 2015).

Plaintiff alleges that Defendants accessed her Gmail account and altered or deleted emails stored there and also "commandeered" and deleted large portions of her Instagram account.  She further alleges that Defendants "received, read, saw, or reviewed" the email and Instagram messages "while they were stored in temporary, intermediate storage incidental to transmission" and before she had read them, and that the communications were "stored for backup protection."

For purposes of stating a claim pursuant to Rule 12(b)(6), Plaintiff's allegation suffice, and the motion to dismiss this claim is denied.

Federal Wiretap Act.  The second federal claim, asserted in Count VIII of the SAC, is for violations of 18 U.S.C. §§ 2511 and 2520 of the Federal Wiretap Act.  Section 2511 forbids a person from intentionally intercepting any electronic communications.  Section 2520 provides a civil action for anyone whose communications were obtained in violation of the Federal Wiretap Act.

The term "intercept" is defined by the Federal Wiretap Act as the "aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).  The term "electronic communication" includes "any transfer of signs, signals, writings, images, sounds, data, or intelligence" that is transmitted by a "system that affects interstate or foreign commerce." *Id.* § 2510(12).  While the Eighth Circuit has not spoken to the issue, "[e]very circuit court to have considered the matter has held that an 'intercept' under the Act must occur contemporaneously with transmission." *Luis v. Zang*, 833 F.3d 619, 627 (6th Cir. 2016) (quotation marks omitted). *See also Henson v. Howard Univ.*, No. CV 19-2734 (JEB), 2020 WL 619853, at *3 (D.D.C. Feb. 10, 2020).

In support of this claim, Plaintiff alleges that Defendants "commandeered her Instagram account and intercepted and received electronic messages intended for her," preventing her from receiving or reviewing the messages.  She further alleges that Defendants "intercepted, and then received, read, saw, or reviewed both email messages and Instagram messages that were intended for Plaintiff" and that she has not seen or received the messages.   Plaintiff does not allege that the interceptions were contemporaneous with the transmission of those messages.

Her allegations that Defendants "intercepted" and received the Gmail and Instagram messages intended for her is not sufficient to state a claim under the Federal Wire Tap Act.  Defendants motion to dismiss this claim is granted.

<u>State Law Claims</u>

<u>Defamation.</u>  To prove defamation in Arkansas requires a private individual to prove the following:  (1) the defendant made a defamatory statement of fact; (2) the identification of or reference to plaintiff in the statement; (3) the statement was published by the defendant; (4) the defendant was at fault for the publication; (5) the statement was false; and (6) the plaintiff sustained damages as a result of the statement. *Northport Health Servs., Inc. v. Owens*, 158 S.W.3d 164 (Ark. 2004).

Plaintiff bases her defamation claim on three writings undertaken by Defendants.  First is the formal written complaint that Defendants made to the Arkansas State Nursing Board ("the Nursing Board"). The second is the September 13, 2019 letter Defendants sent to patients and "others."  The third writing is the press release also dated September 13, 2019.[1]

In her SAC, Plaintiff alleges that the following statements in the complaint made to the Nursing Board are false:  that she engaged in a "systematic process of improperly accessing, copying and downloading" comprehensive PHI information of LRPS patients; that Plaintiff impermissibly acquired information "in excess of 5,000 patients"; and that she had been sharing the PHI with unauthorized third parties. The letter written by Dr. Spann and sent to over 6,000

---

[1] In support of their motion to dismiss, Defendants attach as exhibits copies of the letter and the press release. (Doc. No. 21-1 and 21-2).  Plaintiff asks the Court not to consider these documents until both parties "have the opportunity to offer evidence supporting their respective positions." As these documents are clearly embraced by the SAC and her claims rest upon them, they are proper for the Court to consider in this motion to dismiss.  *Neubauer v. FedEx Corp.*, 849 F.3d 400 (8th Cir. 2017).

individuals contains the following statements that Plaintiff challenges as false: that LRPS discovered that "reports, images and other information" containing Protected Health Information (PHI) of "several" patients had been downloaded by one of LRPS's nurses to her personal email without the knowledge or consent of LRPS; after the PHI breach was discovered and investigated, the nurse was terminated; and that the nurse also had "obtained the Clinic's log-in information for one of the vendor accounts" which gave her access to further PHI. The press release contained these same statements.

The first argument Defendants assert in support of their motion to dismiss the defamation claim is, that to the extent that any statement they made was defamatory, the statements were covered by qualified privilege. Under Arkansas law, when a statement is covered by qualified immunity when it "is made in good faith upon any subject-matter in which the person making the communication has an interest or in reference to which he has a duty, and to a person having a corresponding interest or duty, although it contains matters which, without such privilege, would be actionable." *Wal-Mart Stores, Inc. v. Lee*, 74 S.W.3d 634, 653 (Ark. 2002). The Court in *Wal-Mart* went on to explain that the qualified privilege "must be exercised in a reasonable manner and for a proper purpose and that the immunity does not extend to irrelevant defamatory statements that have no relation to the interest entitled to protection" and that it is lost "if it is abused by excessive publication; if the statement is made with malice; or if the statement is made with a lack of grounds for belief in its truthfulness." *Id.* at 654.

Whether a qualified privilege covers a statement challenged as defamatory is a fact question. *Id.* As it is an affirmative defense, it is not the Plaintiff's burden to prove or defend at this stage of the litigation. Furthermore, Defendants assume facts that are not alleged in the SAC, such as that the information contained on her phone contained "protected health

information" that "would solely be for the purpose of patient treatment or by Dr. Spann" and that the HIPPA breach affected 500 or more individuals (and may have affected more than 1,000 individuals).  The SAC only alleges that Dr. Spann directed Plaintiff to create a Shutterfly photobook for which she took photos on her personal phone---there is no description of what is in the photos or how many patients, if any, were included in the photobook.  In addition, the SAC alleges that the claimed defamatory statements were sent to over 6,000 recipients, some of whom were not currently and had never been patients of Defendants; the September 13, 2019 letter only states that the PHI of "several" patients had been downloaded.   The motion to dismiss the defamation claim based on the defense of qualified immunity is denied.

Defendants also move for dismissal of the defamation claim for failure to allege each of the requisite elements.  Defendants argue that Plaintiff has not sufficiently pleaded three of these elements. First, Defendants argue that Plaintiff fails to sufficiently alleged that they were at fault in the publication.  This argument is based on the defense that Defendant's had qualified immunity for the statements that they made.  As stated above, this theory rests upon facts that are not alleged and are not properly before the Court.

Second, Defendants assert that Plaintiff has not sufficiently alleged that the statements were defamatory or disparaging since, they argue, the content they published was required under federal law. Whether the challenged statements were required by law does not address Plaintiff's burden to state her claim for defamation, but rather goes to proof of Defendants' affirmative defense. The allegations in the SAC are sufficient to show that the challenged statements were defamatory or disparaging in that LRSD accused her of breaking the law and illegally accessing PHI and sharing it with third parties.

Third, Defendants argue that Plaintiff's allegations as to her damages are insufficient.

The Arkansas Supreme Court has stated that "a plaintiff must establish actual damage to his reputation, but the necessary showing of harm is slight. *Calvary Christian Sch., Inc. v. Huffstuttler*, 238 S.W.3d 58, 69 (Ark. 2006) (citing *Ellis v. Price,* 990 S.W.2d 543 (Ark. 1999). A plaintiff can satisfy their burden of proof burden by establishing that the defamatory statements were communicated to other individuals and were detrimental to plaintiff's relationships with those individuals; proof is not required of actual out-of-pocket expenses. *Id.* at 69. Here, Plaintiff has alleged that Defendants' actions, including making the allegedly defamatory statements, have resulted in "a sharp decline in business in her new position with Franks Dermatology." (Doc. No. 9, ¶ 47). This allegation is more than conclusory and is sufficient to show damage.

Finally, Defendants mention in their motion to dismiss Plaintiff's defamation claim that she was not identified by name in the letter or the press release. The SAC contains allegations that the challenged statements were clearly in reference to her, as evidenced by the number of people who contacted her after the statements were released.[2] Plaintiff has sufficiently alleged each of the elements necessary to state a claim for defamation.

Tortious Interference with Contractual or Business Expectancy. A claim for tortious interference with a business expectancy under Arkansas law requires proof of these elements: (1) that the plaintiff had a business expectancy with a third party; (2) the defendant knew of the

---

[2] *See Tholen v. Assist Am., Inc.*, No. 19-1290, 2020 WL 4375034 (8th Cir. July 31, 2020) (analyzing a defamation claim under Minnesota law with an identification element similar to Arkansas's that the "allegedly defamatory statement "must refer to some ascertained or ascertainable person and that person must be the plaintiff.") and 114 Am. Jur. Proof of Facts 3d 513 (Originally published in 2010) (citing Restatement (Second) of Torts § 564, cmt. d.) ("It is not necessary that the plaintiff be specifically named in the communication to be defamatory, but it must be clear to those who know and are acquainted with the plaintiff that the defamatory statement was directed to him or her.").

expectancy; (3) the defendant intentionally and improperly interfered and caused a breach or termination of the expectancy; (4) the plaintiff sustained damages as a result. *Baptist Health v. Murphy*, 373 S.W.3d 269, 281–82 (Ark. 2010).

Defendants argue that their actions were not improper on the basis that they were required by federal and state law to report to patients the risk to their PHI.  As discussed above in connection with the defamation claim, neither the allegations in the SAC nor the exhibits attached to the motion to dismiss establish that the statements publicized by Defendants were legally required to be sent to either 6,000 individuals or published in a press release.  Plaintiff has alleged that after she left employment with Defendants, she used her personal Instagram account for business purposes, including scheduling appointments with new and existing patients.  She further alleged that when Defendants took over her Instagram account and changed her password, she lost requests for appointments that were intercepted by Defendants.  Plaintiff has sufficiently pleaded that Defendants' acted improperly and interfered with her business expectancy.

Defendants also argue that Plaintiff's failure to state that she had a business expectancy with any specific patient is fatal to her claim of tortious interference.  Plaintiff will eventually have to provide proof of specific clients or appointments that she lost as a result of Defendants' actions.  *Apprentice Info. Sys., Inc. v. DataScout, LLC*, 544 S.W.3d 39, 43–44 (Ark. 2018).  She alleges that both new and old patients had sent her scheduling requests via Instagram that she never received because Defendants' intercepted them and changed her password, which the Court recognizes may be difficult to prove.  However, the SAC contains allegations sufficient to establish that Plaintiff had a business expectancy with third parties that Defendants were aware of and improperly interfered with.

Outrage.  A plaintiff must prove four elements to establish a claim for outrage, or intentional infliction of emotional distress under Arkansas law: (1) the defendant intended to inflict emotional distress or should have known that emotional distress was the likely result of its conduct; (2) the defendant's conduct was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the plaintiff's emotional distress was so severe that no reasonable person could be expected to endure it. *Crockett v. Essex*, 341 Ark. 558, 563-64 (2000).  The Arkansas Court of Appeals has described this tort as a "disfavored claim" and an "extremely narrow tort, rarely recognized in Arkansas caselaw." *Sawada v. Walmart Stores, Inc.*, 473 S.W.3d 60, 69 (Ark. App. 2015); Silverman *v. Vill.*, No. 5:17CV00329 JLH, 2019 WL 2881586, at *8 (E.D. Ark. July 3, 2019) (quoting *McAdams v. Curnayn*, 239 S.W.3d 17, 22 (Ark. App. 2006)).

The following are cases that refused to find the tort of outrage under Arkansas law:

 *Smith v. American Greetings Corp.*, 304 Ark. 596, 804 S.W.2d 683 (1991) (an employer threatening his employee, hitting the employee, and then firing the employee for "provoking a fight"); *Ross v. Patterson*, 307 Ark. 68, 817 S.W.2d 418 (1991) (a doctor who developed a substance abuse problem with drugs and alcohol treating a pregnant patient while suffering from addiction, then being unavailable at the time of the child's birth as a result of the substance abuse problem); *Kelley v. Ga.–Pac. Corp.*, 300 F.3d 910 (8th Cir. 2002) (a supervisor providing an employee's 19–year–old daughter with narcotics, taking her to a strip club, and watching her dance topless); and *Crockett v. Essex*, 341 Ark. 558, 19 S.W.3d 585 (2000)  (a funeral director engaged in the following behavior: urging participants in the funeral to hurry and to shorten the funeral service at the funeral home; driving the hearse to the grave site in excess of sixty-five miles per hour, thereby leaving mourners who otherwise would have attended the burial service behind; acting annoyed during the burial service and hurrying the burial service along; putting a disabled family member in another family member's car and driving that car over graves and gravestones; and the funeral director talking on his cell phone for an extended period of time during the funeral service).

*Cannady v. St. Vincent Infirmary Med. Ctr.*, 537 S.W.3d 259, 267 (Ark. 2018) (fn. 1 of dissent).

Assuming the truth of the allegations of the SAC, these facts fall far short of conduct that was

extreme and outrageous, beyond all possible bounds of decency.  Counsel should carefully

consider the context of existing law before filing suit on the basis of this exceptionally narrow

and disfavored tort.  The claim for outrage is dismissed.

 False Light.  In support of her claim for false light, Plaintiff alleges that Defendants'

letter to former patients "and others" as well as the press release they submitted were "replete

with false and disparaging statements about Sims" which placed her in a false light before the

public.  The claim of false light, "has two essential elements: the complaining party must show

(1) that the false light in which he was placed by the publicity would be highly offensive to a

reasonable person, and (2) that the defendant had knowledge of or acted in reckless disregard as

to the falsity of the publicized matter and the false light in which the plaintiff would be placed."

*Sawada v. Walmart Stores, Inc.*, 473 S.W.3d 60, 68–69 (Ark. App. 2015) (citing *Dodrill v. Ark.*

*Dem. Co.*, 590 S.W.2d 840, 845 (Ark. 1979).  The second element requires proof of actual

malice; "[t]here must be sufficient evidence to permit the conclusion that the Defendant, in fact,

entertained serious doubts as to the truth of his publication."  *Dodrill* at 845; *Dodson v. Dicker*,

812 S.W.2d 97, 99 (Ark. 1991).  In addition to these two elements, Plaintiff must prove that she

suffered damages that were proximately caused by Defendants' actions.  Ark. Model Jury Instr.,

Civil AMI 423.  Damages can include recovery for humiliation, embarrassment, and mental

anguish, regardless of the presence of any physical injury.  Arkansas Law Of Damages § 33:11

(citing *AAA T.V. & Stereo Rentals, Inc. v. Crawley*, 679 S.W.2d 190 (Ark. 1984) and *Olan Mills,*

*Inc. of Tex. v. Dodd*, 353 S.W.2d 22 (Ark. 1962)).

 Defendants argue that Plaintiff has not alleged any damages and also that the publicized

matter does not identify Plaintiff.  Defendants also state that they believed the statements they made and that they had a duty to report what they did.  However, as previously stated, the complaint sufficiently alleges that Defendants gave publicity to a matter concerning Plaintiff from which she was readily identified by numerous people even though she was not identified by name.  Plaintiff also alleges that as a result of the statements, she experienced a sharp decline in her business.  Furthermore, the SAC alleges that and was contacted by many family members and former patients after they leaned of the statements, which allows the reasonable inference that Plaintiff suffered some embarrassment.  The motion to dismiss the false light claim is denied.

Conversion.  To prove a claim for conversion, Plaintiff must establish that Defendants "wrongfully committed a distinct act of dominion" over her property in a manner that was a denial of or is inconsistent with her rights.  *Integrated Direct Mktg., LLC v. May*, 495 S.W.3d 73, 75 (Ark. 2016).  Arkansas allows conversion claims based on "intangible property, such as electronic data, if the actions of the defendant are in denial of or inconsistent with the rights of the owner or person entitled to possession."  *Integrated Direct Mktg., LLC v. May*, 495 S.W.3d 73, 76 (Ark. 2016).  Plaintiff has sufficiently alleged her claim of conversion.

Computer Trespass.    Plaintiff alleges that Defendants committed computer trespass pursuant to Ark. Code ann. §§ 5-41-104(a).[3]  This statute makes it a crime if a person "intentionally and without authorization accesses, alters, deletes, damages, destroys, or disrupts any computer, computer system, computer network, computer program, or data."  In two sentences Defendants argue that "Plaintiff failed to specify what email, data, or computer Defendants are alleged to have accessed," failed to allege the contents of the email, and failed to

---

[3] Ark. Code Ann. § 5-4-106 permits a civil action for a violation of this statute.

14

show how she was injured.  Defendants propose too high a burden of proof at this stage of the litigation.  Plaintiff alleged that Defendants intentionally and without authorization accessed both her personal email account and her Instagram account; that Defendants deleted emails, intercepted Instagram messages, and changed the password on her Instagram account so she could no longer access it; and that she suffered a "sharp decline" in business at her new job.  These allegations are sufficient to state a claim for computer trespass.  See *Jenkins v. APS Ins., LLC*, 431 S.W.3d 356, 362 (Ark. 2013).

Sexual Harassment.  Plaintiff's claim for sexual harassment in the form of a hostile work environment is brought pursuant to the Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-123-101, *et seq*.  Courts look to cases interpreting Title VII when analyzing Arkansas sexual-harassment claims.  *Island v. Buena Vista Resort*, 103 S.W.3d 671, 675–76 (Ark. 2003).  Plaintiff must prove the following to prevail on this claim: (1) that she is a member of a protected group; (2) that she was the subject of unwelcome sexual harassment; (3) that a causal nexus existed between the harassment and protected group status; (4) that harassment affected a term, condition, or privilege of employment; and (5) that her employer knew or should have known of the harassment and failed to take prompt and effective remedial action.  *Hales v. Casey's Mktg. Co.*, 886 F.3d 730, 735 (8th Cir. 2018).  Regarding the fourth element, "the conduct must be sufficiently severe or pervasive to create an environment that a reasonable person would find hostile or abusive and that actually altered the conditions of the victim's employment." *Hales v. Casey's Mktg. Co.*, 886 F.3d 730, 735 (8th Cir. 2018) (citing *Crist v. Focus Homes, Inc.*, 122 F.3d 1107, 1111 (8th Cir. 1997)).

The standards for establishing a hostile-work environment claim are demanding, and the Supreme Court has tasked district and appellate courts to filter out complaints that do not rise to

the level of actionable harassment.  *See Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1038 (8th

Cir. 2005) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788. (1998).  "In determining

whether the conduct is sufficiently severe or pervasive, we look to the totality of the

circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is

physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

interferes with an employee's work performance.'" *Duncan v. Gen. Motors Corp.*, 300 F.3d 928,

934 (8th Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993)).

Plaintiff alleges that sexually suggestive comments made to her by Dr. Spann during her

time at LRSD created a hostile work environment.  The SAC attributes the following comments

to Dr. Spann:  Plaintiff's "boobs look good in that shirt" and other comments about her breasts;

Plaintiff was "making [him] think inappropriate things"; asking Plaintiff and her female

colleague "who is better in bed"; and "now, don't go Matt Lauer on me," or "I can't say what I

want thanks to Matt Lauer." (Doc. No. 19, ¶ 15.)  She says Dr. Spann knew "this treatment" was

unwelcome—without alleging any facts to suggest this knowledge—and that was "unrelenting."

(*Id*. at ¶ 16).

These comments do not rise to the level of actionable harassment as it has been analyzed

by the Eighth Circuit, which has recognized that not all conduct that is "well beyond the bounds

of respectful or appropriate is nonetheless insufficient to violate Title VII." *Paskert v. Kemna-

ASA Auto Plaza, Inc.*, 950 F.3d 535, 538 (8th Cir. 2020).  The court in *Paskert* referenced two

other cases, as summarized by *McMiller v. Metro*, 738 F.3d 185, 188 (8th Cir. 2013), where

inappropriate conduct did not establish actionable conduct.  In *Duncan v. General Motors Corp.*,

300 F.3d 928, 931-35 (8ᵗʰ Cir. 2002), a supervisor sexually propositioned [the employee],

repeatedly touched her hand, requested that she draw an image of a phallic object to demonstrate

16

her qualification for a position, displayed a poster portraying the plaintiff as the 'president and CEO of the Man Hater's Club of America,' and asked her to type a copy of a 'He-Men Women Hater's Club' manifesto.  These actions facts were held not sufficiently severe or pervasive enough to state a hostile work environment.  Likewise, the court in *LeGrand v. Area Resources for Community and Human Services*, found that "even more outrageous conduct, including graphic sexual propositions and even incidental unwelcome sexual contact, did not establish severe or pervasive conduct sufficient to be actionable. *McMiller* at 189 (citing *LeGrand*, 394 F.3d 1098, 1100–03 (8th Cir. 2005)).

Plaintiff cites to two district court cases in which the court denied the defendant's motion to dismiss claims of sexual harassment: *Sharbine v. Boone Expl., Inc.*, No. 09-CV-1025, 2010 WL 892117 (W.D. Ark. Mar. 9, 2010) and *Driver v. Big Daddy's on the Landing, LLC*, No. 4:13-CV-76 CEJ, 2013 WL 1720965, at *1 (E.D. Mo. Apr. 22, 2013).  Plaintiff argues that the allegations she makes are more egregious than the allegations that survived motions to dismiss in those cases.  The Court disagrees.  In *Sharbine*, the plaintiff alleges that "her male co-workers used crude and profane language around her and in reference to her" including "remarks about [the plaintiff's] genitals and what they would like to do to her in a sexual manner; also that a male co-worker exposed himself to her. *Sharbine* at *1.  The plaintiff also alleged that she complained about this behavior to her supervisor but no action was taken.  In *Driver*, the plaintiff alleged that a coworker "touched her breasts and buttocks, rubbed his body against her, and made explicit sexual comments and demands for sexual favors." *Driver* at *1.  She further alleges that when she complained to two managers about the behavior, she was told to "deal with it" and that she "should not come to work looking so sexy." *Id.*

The statements Plaintiff attributes to Dr. Spann in her SAC are not as egregious as those

17

found in *Sharbine* and *Driver.* Also, unlike the plaintiffs in those cases, Plaintiff does not allege

that she complained about the comments Dr. Spann is alleged to have unrelentingly made.

Finally, Plaintiff does not allege that these statements unreasonably interfered with her work

performance, which is fatal to her claim.  The motion to dismiss the sexual harassment claim is

granted.

<u>Failure to Pay Last Paycheck.</u>  Plaintiff seeks an award of statutory penalties in the

amount of double her wages owed but not paid pursuant to Ark. Code Ann. § 11-4-405.  This

statute requires an employer that discharges an employee to pay all the employees wages due by

the next regular payday or the employer shall be liable to the employee for double the wages due.

In support of this claim, Plaintiff alleges that LRPS made unlawful deductions from Plaintiff's

final paycheck and that the final paycheck did not include all of the commission and hourly

wages she was owed.  She further alleges that in spite of her formal demand, LRPS has failed to

pay her the rest of she is owed.  In support of their motion to dismiss this claim, Defendants

simply argue against the allegations, stating that "[a]ll of [Plaintiff's] wages and commission due

were on the final paycheck."  Defendant's motion to dismiss the claim for statutory damages for

failure to pay her all her wages due is denied.[4]

<u>Failure to Pay Commissions.</u>  Plaintiff concedes in her response that she is not entitled to

statutory damages pursuant to Ark. Code Ann. § 4-70-306 for Defendant's failure to pay her the

commissions she alleges she is owed. Defendants' motion to dismiss this claim is granted.

---

[4] The Court considered dismissing this cause of action on the basis of Plaintiff's allegation that
she voluntarily resigned rather than that she was discharged. *See* Krippendorf *v. Mitchell*, No.
4:05CV00888 JLH, 2006 WL 8445171, at *3 (E.D. Ark. Mar. 1, 2006) ("Arkansas law is clear
that an employee who quits his job is not entitled to the statutory penalty.").  However, Plaintiff
alleges that her voluntary departure date was unilaterally moved up when she refused to sign an
exit agreement and the September 13, 2019 letter and press release, which the Court is
considering, state that the nurse was terminated.

Conclusion

THEREFORE, the motion to dismiss (Doc. No. 20) is GRANTED in part and DENIED in part.  The motion to dismiss is granted as to the claims for violations of the Federal Wiretap Act, outrage, sexual harassment, and for violations of Ark. Code. Ann § 4-70-306.  The motion to dismiss is denied as to the remaining claims, leaving Plaintiff's claims for violations of the Stored Communications Act, defamation, tortious interference with a business expectancy, conversion, computer trespass, violation of § 11-4-405, and intrusion upon seclusion.[5]

IT IS SO ORDERED this 5th day of August, 2020.

_____
UNITED STATES DISTRICT JUDGE

---

[5] Dismissal of this claim was not argued in Defendants' motion to dismiss.